[Cite as *State v. Jarvis*, 2024-Ohio-534.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| GABRIEL JARVIS, | : | Case No. 2023CA00039 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Case No. 2022-
CR-2122A

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            February 13, 2024

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KYLE L. STONE                         GEORGE URBAN
Prosecuting Attorney                  116 Cleveland Ave. NW
Stark County, Ohio                    Suite 808
                                      Canton, Ohio 44702
By: VICKI L. DESANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South Ste. 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1}   Appellant Gabriel Jarvis appeals the trial court's decision denying his motion to suppress and his conviction. Appellee is the State of Ohio.

**STATEMENT OF THE FACTS AND THE CASE**

{¶2}   On October 13, 2022, a Stark County grand jury indicted the appellant on one count of Rape in violation of R.C. §2907.02(A)(1)(b) and one count of Endangering Children R.C. §2919.22(B)(1). The next day, the appellant pled not guilty to both charges.

{¶3}   On November 1, 2022, the defendant filed a Motion for Incompetency Examination.

{¶4}   On January 13, 2023, the trial court admitted a report addressing the competency of the appellant and was stipulated to by both parties.

{¶5}   On January 24, 2023, the appellant was found to be competent to stand trial.

{¶6}   On February 17, 2023, the appellant filed a Motion to Suppress, asking the trial court to suppress statements the appellant made to police officers.

{¶7}   On March 1, 2023, the State filed a Response to the appellant's Motion to Suppress.

{¶8}   On March 2, 2023, the trial court held a hearing on the appellant's motion to suppress.

{¶9}   At the suppression hearing, Detective Romanin testified he was part of the investigative team that received a report of suspected child abuse of a four-month-old, V.J., in September of 2022. In connection with that investigation, Detective Sedares

interviewed the appellant on September 20, 2022. The appellant terminated that interview because he wanted to be done talking to the detective.

{¶10} On September 22, 2022, detectives, with the assistance of the Canton SWAT team, executed a search warrant on the appellant's home. The appellant was detained with zip cuffs and then transported to the detective bureau. The detective testified that the appellant was in custody and mirandized when interviewed.

{¶11} During the interview, the appellant indicated he has a high school education with some college. He did not appear intoxicated or on drugs or alcohol. The appellant chose to speak with police about the allegations of sexual abuse against the victim. The appellant discussed the abuse by his father. Detective Romanin said the appellant was upset at the beginning of the interview but became more comfortable. Throughout the course of the interview, the appellant confessed to the rape of V.J., his child. A video of the interview was submitted into evidence.

{¶12} Next, the appellant testified that about twenty officers showed up to execute a search warrant. He said he was terrified when they came into his home. They took him to the police department for an interview. He said he was scared and upset during the interview. The appellant said he brought up his father's abuse because he understands what abuse does, and that is not who he is. He then said that he does not recall confessing to raping the victim and that everything went blank in the interview. The appellant also testified that he has been interviewed by police in the past, most recently two days prior with Detective Sedares.

{¶13} On March 10, 2023, the trial court denied the appellant's Motion to Suppress.

{¶14} On March 14, 2023, the matter proceeded to a jury trial.

{¶15} First, Kami Morris testified that she works as an intake worker at Stark County Job and Family Services ("the Agency"). In September of 2022, the Agency received concerns as the appellant's four-month-old child was seen medically for having an anal tear. The appellant blamed this on a large bowel movement. The doctor had doubts that this was an accurate statement and that the child could be the victim of abuse.

{¶16} At the time the Agency became involved, the appellant was living with V.J. and V.J.'s mother. Ms. Morris made an unannounced visit to check on V.J. During the visit, the appellant stated that he woke up to V.J. crying, and during a diaper change, V.J. had a large bowel movement, which caused bleeding. He was alone with V.J. at the time, but waited until V.J.'s mother returned home from work before seeking medical attention. During the interview, he stated he did not like being alone with V.J. because he didn't want to be accused of anything or do anything wrong to her. The appellant brought V.J. to Ms. Morris but refused to allow Ms. Morris to enter the residence. While at the appellant's residence, Ms. Morris informed the appellant she would be setting up a medical appointment for V.J. at Children's Network.

{¶17} After the appointment, the attending nurse reviewed the findings with Ms. Morris. Ms. Morris communicated those concerns with V.J.'s mother and worked together to set up a safety plan. V.J. was transported to Children's Hospital and had to have surgery. She was informed that the severity of the injury was not consistent with that of a large bowel movement.

{¶18} Next, Detective Sedares testified that he is the Juvenile Sex Crimes Investigator for the Detective Bureau. On September 20, 2022, he was assigned to

investigate the suspected child abuse of V.J. After speaking with the medical personnel, Detective Sedares said the victim had significant tearing in her anus, which needed to be surgically repaired.

**{¶19}** Detective Sedares then went to the appellant's home and asked that the appellant return to the police station and speak with him. The appellant agreed. Detective Sedares did not read the appellant his *Miranda* rights and told the appellant he was free to leave at any time. The appellant then told the detective the story of V.J. having a very large, hard bowel movement, and that is what tore her anus. Detective Sedares noted that he did not find the appellant credible. He asked the appellant if he pressed too hard on V.J. while cleaning her causing the tear, or if he did it on purpose. The detective said that this is the only explanation for what occurred. At this point, the appellant ended the interview.

**{¶20}** Detective Sedares then testified a rape kit was complete for V.J., and no DNA foreign to V.J. was found. Detective Sedares then obtained a search warrant for the appellant's home to attempt to find V.J.'s diapers to see if they contained any foreign DNA. The SWAT team executed the search warrant on the appellant's residence. The police recovered two bloody wipes, three diapers, and some electronics. Law-enforcement officers recovered no diapers with large bowel movements. Neither the diapers nor wipes were sent out for scientific testing because the appellant confessed.

**{¶21}** Next, Alissa Edgein testified that she is employed as a nurse practitioner at Akron Children's Hospital. On September 19, 2022, Nurse Edgein treated V.J. for a rectal injury and concerns of constipation. She further explained that a child suffering from constipation may experience a small, superficial tear in the anus similar to a paper cut.

V.J.'s mother had told Nurse Edgein that the day before V.J. had a good day. On Saturday morning, when V.J.'s mother went to change her diaper, she saw a large stool and blood. V.J. had minor issues with constipation until she was two months old, but then she outgrew it.

**{¶22}** After gathering V.J.'s medical history from V.J.'s mother, Nurse Edgein performed a medical evaluation and physical examination of V.J. Nurse Edgein noticed V.J. had a diaper rash and some fissures at the corners of her mouth V.J. She also noted that V.J. had a one-inch laceration on the anus and several small fissures on the anus. Nurse Edgein said the laceration and fissures are not consistent with a large stool.

**{¶23}** After the physical examination, Nurse Edgein spoke with V.J.'s mother and the caseworker. She said this is not the type of fissure they see with a large stool. V.J.'s mother then changed her story to say that she was actually not home when it occurred, but V.J. was with the appellant. Nurse Edgein determined it was inconclusive if V.J. had experienced sexual abuse. As V.J. was not old enough to say what happened and V.J.'s mother had been telling untruths since she arrived, she could not make that diagnosis with a reasonable degree of medical certainty.

**{¶24}** Next Dr. Paul McPherson testified that he is the medical director for the child abuse clinics at Akron Children's Hospital. He became involved with V.J. on September 19, 2022. Nurse Edgein called and asked him to look at some pictures of V.J.'s anal region and provided him with a history of the information she received from V.J.'s mother. Upon reviewing the photos, Dr. McPherson said he was surprised at the extensive nature of the injuries. That these injuries are not consistent with hard or large stool. He recommended V.J. been seen further as he was worried about current infection, future

infection, the anus being able to function properly with such a laceration, and that the laceration required surgical closure.

**{¶25}** Dr. McPherson testified that V.J.'s injuries were more consistent with penetrative trauma rather than an anal fissure from a large, hard bowel movement. The laceration went beyond the outer layer of skin; it went through the subcutaneous tissue and into the muscle. Dr. McPherson concluded within a reasonable degree of medical certainty that a penetrating trauma to the anal region consistent with child sexual abuse caused V.J.'s injuries. These injuries were not consistent with the passage of a hard stool.

**{¶26}** Next, Detective Vincent Romanin testified he is a detective with the City of Canton Police Department investigating child abuse cases, including sexual abuse. On September 22, 2022, Detective Romanin interviewed the appellant after he was taken into custody. While in custody, the appellant agreed to speak with Detective Romanin after being read his constitutional rights. The interview lasted about an hour and twenty minutes. The State played portions of the video recording of the interview at trial.

**{¶27}** During the interview, the appellant told Detective Romanin that he put his thumb in the victim's anus and demonstrated what he did. He then explained how he lifted the leg of his shorts to expose his penis. He then admitted the injuries to the victim were caused by the appellant inserting his penis into the victim's anus. He confessed that the abuse went on for five minutes. The appellant also went into detail about how his father sexually assaulted him when he was a child.

**{¶28}** On cross-examination, Detective Romanin testified that the appellant was initially scared, a search warrant had been executed on his house by a SWAT team, and he was placed in restraints. During the interview, Detective Romanin challenged the

appellant's story, informing him that V.J.'s injuries were not caused by a hard bowel movement.

**{¶29}** After Detective Romanin testified, the State rested its case.

**{¶30}** The appellant moved for acquittal based upon Crim.R. 29 which the trial court overruled.

**{¶31}** On March 16, 2023, the jury convicted the appellant guilty of Rape in violation of R.C. §2907.02(A)(1)(b) and Endangering Children R.C. §2919.22(B)(1).

**{¶32}** The appellant filed a timely notice of appeal raising the following two Assignments of Error:

**{¶33}** "I. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS."

**{¶34}** "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**I.**

**{¶35}** In his first Assignment of Error, the appellant argues the trial court erred in not granting the appellant's motion to suppress. We disagree.

**STANDARD OF REVIEW**

**{¶36}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they

are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶37}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**ANALYSIS**

**{¶38}** In the case *sub judice*, the appellant argues that the trial court should have suppressed his statements because they were not voluntary. The appellant, who undisputedly was in custody and was advised of his *Miranda* rights, was coerced into

confessing by the circumstances and tactics used by law enforcement. The appellant does not contest the trial court's findings of fact but whether the trial court misapplied the law to the facts.

**{¶39}** To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds), citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶40}** The appellant claims he did not voluntarily waive his *Miranda* rights and that law enforcement coerced his confession during the interrogation.

**{¶41}** In *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶¶34-35, the Supreme Court of Ohio set forth the following test:

> When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receives *Miranda* warnings to protect against compelled self-incrimination. *Miranda* at 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694. A suspect may then knowingly and intelligently waive these rights and agree to make a statement. *Id.* at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. See *Id.* at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Colorado v. Connelly*, 479 U.S. 157, 168-169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus; *see also Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We have held that a waiver is not involuntary unless there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep. *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989).

**{¶42}** In the case *sub judice*, Detective Romanin ascertained that the appellant had graduated high school and had some college education, he is able to read, write, and understand the English language, the appellant did not appear to be intoxicated or drug impaired, the appellant is twenty-one years old, and had previous experience with the criminal justice system. Detective Romanin thoroughly read each right and explained in detail what each right meant, including the appellant's ability to revoke the waiver at any time and end the interview. The appellant is familiar with the criminal justice system indicating he has been read his rights before as well. The trial court found that neither his alleged intellectual deficiency nor his dyslexia prevented him from understanding Detective Romanin. The appellant was not threatened or promised anything to waive his *Miranda* rights. The trial court considered the totality of the circumstance and found the appellant knowingly, voluntarily, and intellectually waived his *Miranda* rights.

**{¶43}** Next, the appellant argues that law-enforcement officers coerced his confession after he waived his *Miranda* rights.

**{¶44}** The Supreme Court defined "coercion" in *State v. Belton*,

This court may find coercion when law-enforcement officers "persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing his rights and responding to questions." *Edwards*, 49 Ohio St.2d at 39, 358 N.E.2d 1051. However, "the presence of promises does not as a matter of law, render a confession involuntary." *Id* at 41, 358 N.E.2d 1051. Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant. *Id.* And "[a]dmonitions to tell the truth are considered to be neither threats nor promises." *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994); *see also State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶29.

149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶111.

**{¶45}** Furthermore, a law-enforcement officer's assertion that the suspect is lying does not automatically render a confession involuntary. *State v. Knight*, 2d Dist. Clark No. 04-CA-35, 2008-Ohio-4926, ¶111.

**{¶46}** In the case *sub judice*, Detective Romanin conducted the interview in a calm and comfortable manner, even as admitted by the appellant. Detective Romanin was the only law-enforcement officer present during the interview, and the appellant was not subject to mistreatment or physical deprivation. The interview lasted about one hour and twenty minutes and was not overly lengthy, intense or too frequent. The appellant was

twenty-one years old, graduated high school with some college education, and had previous experience with law enforcement. Although the appellant says he has dyslexia and suffers from an intellectual deficit, it did not appear to hamper his understanding of what was happening. The discussion of the appellant's former abuse and Detective Romanin's suggestion that he be a better man than his father when discussing the advantages of telling the truth was not a threat or inducement.

{¶47} The record does not support the appellant's allegation of coercion by law enforcement. Under the totality of the circumstances, the record supports the trial court's conclusion that the appellant knowingly, intelligently and voluntarily waiver his *Miranda* rights and his statements to law-enforcement were made voluntarily.

{¶48} Accordingly, the appellant's first Assignment of Error is overruled.

**II.**

{¶49} In his second Assignment of Error, the appellant argues that his convictions were not based upon sufficient evidence and were against the manifest weight of the evidence. We disagree.

**STANDARD OF REVIEW**

{¶50} The appellant challenges his convictions on both manifest weight and sufficiency of the evidence grounds. Sufficiency of the evidence was addressed by the Supreme Court of Ohio in *State v. Woreley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶57:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on grounds as state in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn.4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

**{¶51}** Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶52}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as state by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355. The Court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the

evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*. (Emphasis added.) Black's, *supra*, at 1594.

*Id.* at 387.

{¶53} The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

{¶54} In addition, "in determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶55}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

### ANALYSIS

**{¶56}** R.C. §2907.02, in pertinent part, states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when the following applies:

* *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

* *

(B) Whoever violates this section is guilty of rape, a felony of the first degree. If the offender under division (A)(1)(a) of this section substantially impairs the other person's judgment or control by administering any controlled substance, as defined in section 3719.01 of the Revised Code, to the other person surreptitiously or by force, threat of force, or deception, the prison term imposed upon the offender shall be one of the definite prison terms prescribed for a felony of the first degree in division (A)(1)(b) of section 2929.14 of the Revised Code that is not less than five years, except that if the violation is committed on or after March 22, 2019, the court shall impose

as the minimum prison term for the offense a mandatory prison term that is one of the minimum terms prescribed for a felony of the first degree in division (A)(1)(a) of section 2929.14 of the Revised Code that is not less than five years. Except as otherwise provided in this division, notwithstanding sections 2929.11 to 2929.14 of the Revised Code, an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code. If an offender is convicted of or pleads guilty to a violation of division (A)(1)(b) of this section, if the offender was less than sixteen years of age at the time the offender committed the violation of that division, and if the offender during or immediately after the commission of the offense did not cause serious physical harm to the victim, the victim was ten years of age or older at the time of the commission of the violation, and the offender has not previously been convicted of or pleaded guilty to a violation of this section or a substantially similar existing or former law of this state, another state, or the United States, the court shall not sentence the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, and instead the court shall sentence the offender as otherwise provided in this division. If an offender under division (A)(1)(b) of this section previously has been convicted of or pleaded guilty to violating division (A)(1)(b) of this section or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of this section, if the offender during or immediately after

the commission of the offense caused serious physical harm to the victim, or if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, except as otherwise provided in this division, the court may impose upon the offender a term of life without parole. If the court imposes a term of life without parole pursuant to this division, division (F) of section 2971.03 of the Revised Code applies, and the offender automatically is classified a tier III sex offender/child-victim offender, as described in that division. A court shall not impose a term of life without parole on an offender for rape if the offender was under eighteen years of age at the time of the offense.

R.C. §2919.22, in pertinent part, states:

(B) No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:

* *

(1)     Abuse the child

(E)

* *

(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in circumstances described in (E)(2)(e) of this section, that division applies:

* *

(d) If the violation is the violation of division (B)(1) of this section and results

in serious physical harm to the child involved, a felony of the second degree.

**{¶57}** In the case *sub judice*, the State produced testimony that V.J. was the daughter of the appellant, she was four months old at the time of her injury, and her injuries were so extensive that she needed surgery to repair the laceration on her anus. The testimony showed that while the appellant was alone with the child, V.J. suffered the injuries and that despite the appellant's story, the injuries were not caused by a large, hard bowel movement but were caused by a penetrating trauma to the anal region consistent with child sexual abuse. In addition, the appellant confessed to raping V.J. for five minutes.

**{¶58}** We find the State presented sufficient evidence, if believed by a jury, that the appellant raped the victim and endangered the victim. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. The appellant was not convicted against the manifest weight of the evidence.

**{¶59}** Accordingly, the appellant's second Assignment of Error is overruled.

## CONCLUSION

{¶60} For the forgoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.